24-31-87 Ralph Blaine Smith versus David Silvernail et al. Fairfield County, Ohio et al. Oral arguments, 15 minutes for the plaintiff, 15 minutes to be shared by the defendant, 15 minutes to be shared by the defendant, 15 minutes to be shared by the defendant. Counsel, you may proceed. You may approach the podium and go ahead with your argument. Please the court, I am John Yaklovich and I represent Ralph Blaine Smith who spent over 21 years of his life in prison for a crime he didn't commit. First thing I'd like to talk about today is an issue that's really the elephant in the room. Oh and before I continue, I'd like to reserve four minutes for rebuttal. So the elephant in the room in this case is in my estimation the issue of probable cause. If we look at page 11 of Judge Marbley's decision sustaining the defendant's motions for summary judgment, there is a footnote, footnote five. And in that footnote the judge says because the existence of probable cause is not essential to the resolution of this case, this court declines, I'll stop quoting, declines to determine whether or not Blaine Smith's arrest was supported by probable cause. That seems an unusual statement because one of our primary claims in this case is a 1983 false arrest claim and a false arrest occurs. Page if the arrest is simply made without probable cause. And obviously the question arises how can you grant summary judgment on a false arrest claim if you're not even going to resolve whether Blaine was arrested with or without probable cause. The mechanism that the court used to say I don't need to decide probable cause stems from the Sykes versus Anderson decision of this court. And that footnote actually is erroneous because Sykes versus Anderson specifically says that, and I'm sorry, I broke a tooth last night and I'm going to the dentist and I didn't sleep a whole lot. So I'm a little bit addled today and I apologize. Thanks for being here. I wouldn't have missed it literally for the world. Okay, so in Sykes versus Anderson this court held that a proponent of a false arrest if there is a facially valid warrant approved by a magistrate, that facially valid warrant gives rise to a presumption of probable cause and you can't rebut that pursuant to Sykes unless you show that the officer, whoever the signatory on the warrant affidavit was, that officer has to have made deliberately or recklessly false statements or omissions. And they of course have to be non-testimonial because an officer's testimony is subject to absolute immunity. Counsel, of course here we have a grand jury and a grand jury indictment. So isn't that indictment presumptive evidence of probable cause? Well, that presumption is also rebuttable and we rebutted that presumption stemming from the indictment with a mountain of evidence, virtually all of which had been prepared by defendant Silverdale, the detective. Of course none of that was turned over to defense counsel prior to Blaine Smith's trial and so not having been turned over it was of no value then but of significant evidentiary value today. Of course our circuit has this case, Barnes v. Wright, that says the indictment, if it's fair on its face by a properly constituted grand jury, conclusively determines the existence of probable cause. So isn't that a difficult standard for you to overcome? Well, Your Honor, ultimately I hope that we are here to fathom the truth. What happened? How did this innocent man get convicted? And the record is very clear that he was convicted solely as the result of the actions of two individuals, both of them obviously acting under color of state law. One of them an assistant prosecutor who subsequently became the prosecuting attorney of Fairfield County, the other the police detective who worked in conjunction with the prosecutor as is the ordinary course of business. Of course your client was never retried and acquitted, he was just, tell me if I'm wrong about this, there was a new trial audit to grant it and the prosecutor did not proceed with a new trial so your client was never actually acquitted of anything. Well, that is correct, but he wasn't retried because there is essentially zero competent evidence that could have been introduced by the prosecution during a subsequent trial. The only arguably competent evidence in this case is the eyewitness identification of plaintiff as one of these two alleged armed robberies by Tricia Stephanitsis. We know that Rudy Stephanitsis ultimately testified that he also identified Blaine Smith as one of the robbers, but if you look at the timeline here, we have a robbery that occurred on February 2nd. Tricia Stephanitsis was interviewed by the detective on February 3rd, Rudy on February 4th. Sometime between February 4th and, or rather February 10th I believe would be the correct date here, between February 10th and March 6th or March 7th, Rudy Stephanitsis called Detective Silvernail on the phone and he flatly stated, during the February 10th photo array I did not identify Blaine Smith as one of the robbers. I simply told you that his little photograph looked more like one of the robbers than the other five photographs on the array sheet. But that's not what happened at the time that he showed the photographs, right? They were pretty certain that that's who it was. No, Your Honor, I would beg to differ. Detective Silvernail wrote in his notes that both of the Stephanitsis had identified plaintiff, but that's what Silvernail said that Rudy Stephanitsis had said during the photo array. Rudy Stephanitsis denied that he had said that to the detective and he actually stuck by his guns during that recorded phone conversation to Silvernail when he said, no, I didn't identify this guy as one of the robbers, I just said he looked more like one of the robbers than the other photos. Was he asked that at the trial? Wasn't there a trial? There was and there were three witnesses, the two Stephanitsises and then also, although I can't say that there was any evidence that came out of his mouth, Detective Silvernail. All Silvernail said was, and it's a false statement, he said the only suspect that was ever named in this case was Ralph Blaine Smith. In fact, there was an individual named Dana Rowe whom Rudy Stephanitsis absolutely guaranteed to Detective Silvernail was involved in the robbery. So here's what we've got. We have Tricia Stephanitsis' identification, which isn't tainted by her subsequent retraction as Rudy had corrected Detective Silvernail about the photo array ID. So we look at Tricia Stephanitsis, it's simply her saying, and bear in mind please that in the immediate aftermath of the robbery, 12, 15 hours afterwards, she couldn't describe either of the two robbers other than to say they were black, they were male, they had guns. That's about it. The two Stephanitsises couldn't even agree as to whether Blaine Smith was the 5'8 or 5'9, 160 pound alleged robber, or on the other hand, the 6'1 or 6'2 robber who weighed an additional 50 or 60 more pounds than the shorter guy. Rudy Stephanitsis said it was the top one. I want to wrap up. Your red light's been on there for a while. In other words, you're out of time. Oh, my. And I apologize. I'm going to need to speak more quickly. Thank you for your time. Thank you. Afternoon, Your Honors. Aaron Glasgow. I'm here on behalf of the City of Pickerington and Detective Silvernail. First and foremost, this case is a Brady case. The plaintiff was, his conviction was vacated and he was released based on a finding of a Brady violation. As to that, as the officer, under Muldawan, our officer's duty was to provide all of his evidence, any exculpatory evidence to the prosecutor. There's absolutely no evidence in the case that he didn't live up to that duty. As a matter of fact, the prosecutor, the officer, the plaintiff's own investigator all agree that he did turn over his entire file. So there's no evidence for that and no basis for that claim. And I believe they've essentially conceded on that. Now, opposing counsel speaks to, and I only have, by the way, we're cutting this up seven minutes, eight minutes. I apologize. I know we told the court that. As to probable cause, Judge Marbley didn't need to get to probable cause for the reasons that were already discussed. The initial arrest was based on a facially valid warrant. There's no evidence in the record that my client, Detective Silvernail, provided any false information regarding the basis for the decision to charge, which, by the way, as you'll see in the record, the decision to charge was completely taken out of his hands. The Fairfield County prosecutor had an express policy that any felony charges that were to be brought in that county were to be approved by the prosecutor, by an assistant county prosecutor, and that police were not to bring any felony charges. So that decision wasn't even one made by Detective Silvernail. And as we've argued in our brief, therefore, he's not liable for that. Also, Judge Clay, as you said, that was followed up shortly by a grand jury indictment, which is conclusive of probable cause. There's no evidence. As to the grand jury indictment, that my client, Detective Silvernail, provided false information was reckless in the information that was provided. And even though Judge Marbley did not get to probable cause, there is probable cause. There was probable cause for his arrest, if you're going to go there. As we started to talk to opposing counsel, there was a witness identification by two adults. And there's some – I think we definitely disagree as to any kind of equivocation on these. These two individuals, the Stephanites, both independently picked the plaintiff out of photo arrays. Then when he was arrested, there was a suppression hearing. They testified at the suppression hearing. Yes, that person there, our plaintiff, is the person that robbed us. Then there was a trial. And they sat there, and they said, yes, that person there, the plaintiff, is the person who robbed us. When we deposed them, 20-odd years later, they were asked, do you still believe that that's the person that robbed you? And they said, yes, your client sitting across the table is the person who robbed us. They have been unequivocal throughout this that Ralph Blaine Smith was one of the robbers. The jury heard this at the trial. What's that? The jury heard this at the trial. Yes, your Honor. They pointed out. Absolutely. And that is – opposing counsel said the reason that Ralph Blaine Smith was convicted is because of two people conspiring. No, the reason he was convicted is because two witnesses consistently identified him as one of the robbers. I would disagree as a characterization of the interview and what was said during the interview. Specifically, and it's in the record. We've coded it. What was said was the officer trying to clarify, are you sure? You know, obviously they don't want to just go on a faulty identification. Are you sure that – 100% sure that Ralph Blaine, this person that you're identifying, is the guy? And the first word that Rudy Stephanies has said was yes. His question was 100% sure yes. And then he continues to ask him and press him, and he says, look, you've shown me these pictures. Of those pictures, that's the guy that was in my house. That's the guy that looks – that's him in my house. So if you read the whole context of that statement, I don't think it says – he certainly does not say I'm denying anything. They were originally given a spread of photographs or something? That's correct. I believe it was – I think it was six. There were six different photographs there. And, you know, they run it through the software that comes up with people that would look similar to him so that, you know, there's not a big disparity. And both of them identified his photograph. One of them, I think, actually signed in the wrong place, but all the testimony was he actually picked Mr. Smith out as that person. So even if you go beyond what Judge Marbley did, you – if you look at probable cause, there is probable cause. And it wasn't just the IDs for probable cause. There's also testimony that people heard Mr. Smith talking about a robbery that he had done at the same – basically in the same timeframe. There was also evidence that Mr. Smith was acquainted with the victim's brother. And so there was a question of how did they know there was a safe in the basement? How did they know to hit this house? And there was actually a connection between Mr. Smith and the victims. So those things together ultimately were the basis for probable cause. The probable cause determination that was made, by the way, by the prosecutor. And that does go to the malicious prosecution claim because we've claimed that a black client did the investigation, but he did not participate in the decision to actually charge. And that's pretty clear here. You know, plaintiffs have argued a conspiracy. It's not a conspiracy. It's the police and the prosecutor doing their jobs and staying in their lane. My detective did the investigation. He turned over everything, undisputedly, to Mr. Moser's client. And they looked at the evidence, independently decided to charge, and proceeded. And that's where, you know, may have gotten into some issues with Brady, but that wasn't my client's doing whatsoever. I still have only about 40 seconds. I will just say there's also a Monell claim against Pickerington. Obviously, you are all aware of the four sort of general ways to establish Monell, and there's really no evidence whatsoever as to any of those four ways. So for that reason, unless you follow up questions at the end of my 20 seconds, we would urge you to affirm the district court's decision-grading summary judgment for the city of Pickerington and for Detective Silvernow. Thank you for your time today. Good afternoon, Your Honors, and may it please the court. My name is David Moser, and I am here on behalf of the former prosecutor in this case, Appellee's Greg Marks, and his, again, former employer, Appellee Fairfield County, Ohio. I want to be very, very clear to a point that was raised earlier to my opposing counsel's point. We're not here to prove whether or not Mr. Ralph Blaine Smith should have been exonerated. He never has been exonerated nor acquitted. And to his point regarding whether or not Fairfield County decided to ever retry Mr. Smith. Well, to be very, very correct, and this is clearly in the record, the current prosecuting attorney, Kyle Witt of Fairfield County, actually testified in this case and talked about that decision. He actually met with the witnesses again, 21 years after the fact, and determined especially based on the fact that Mr. Smith had spent 21 years in jail already, there was no utility in retrying that case. Was there an appeal in this case after the trial? Was the appeal in this case after the trial? Was there an appeal? Yes, yes. Mr. Smith, Your Honor, did pursue all post-conviction remedies through the trial, and that's what ended up ultimately vacating his conviction with ordering of a new trial from Judge Behrens at the trial court level. But after that happened, the prosecutor decided to effectively nully the case, not retry it, not because of any mountain of evidence that there was or lack of a mountain of evidence to retry, but because of the judicial utility and lack of a purpose for retrying the case 21 years after the fact. So making that clear, really why I'm here for my appellees, Your Honors, is because of two very, very well-established doctrines, one being absolute prosecutorial immunity, which relates to appellee marks, the other being Minnell liability, which my co-appellee counsel also referenced in relation to his client, the City of Pickerington, applies to Fairfield County as well. Both of those things are insurmountable for appellant's claims to move forward in this case, and the judge, albeit reluctantly at the trial court level, recognized how established those precedents were and determined that he had to be bound by them. So we're not here to retry the evidence that should or should not have proved a conviction. We're here to talk about whether or not Prosecutor Marks's actions first and foremost were immune from the decision-making that he rendered, and he clearly was. Appellant's arguments seemed to focus exclusively, once again, on this meeting that occurred with the prosecutor, then-assistant Prosecutor Marks, right before the grand jury indictment came down, with these victims and eyewitnesses. This occurred in March of 2000. Even based on the pleadings alone, Judge Marbley determined, based on our motion to dismiss, that appellant, plaintiff at the time, had not reasonably or properly alleged any non-prosecutorial activity that Mr. Marks engaged in. He clearly fell squarely within his prosecutorial duties in speaking with witnesses, determining whether or not they would be credible to a jury, assessing how confident they were in their identifications, which they had already rendered before Detective Silvernail, and moving forward with the grand jury and eventual prosecution. That clearly does not fall into an investigative hat, which would remove that absolute immunity. It clearly falls within a prosecutor's job duties, meeting with witnesses, weighing evidence, and assessing their credibility before they play off to a jury of their peers. Nothing in the record or in the arguments raised by appellants today bypasses that immunity or overcomes that immunity. The precedent established by the U.S. Supreme Court in Imbler, and then down the pike through the Sixth Circuit, makes that very, very well settled. Like it or not, and again I said that the trial court expressed some reluctance and maybe some personal issues with some of the precedent that's been settled with respect to the pretty broad-sweeping prosecutorial immunity, and we understand. But we further understand, and that's why we're here. That's what our argument is, is that we're bound by it. And that nothing in the record or in the facts before this court... What's the primary reason that this got vacated after so many years? Was it the ID of the people that made a bad ID or something? Is that what it was? Your Honor, I'll relent. The primary reason that it was vacated after so many years was testimony about a Brady violation. About what? Withholding a Brady violation, withholding certain exculpatory evidence, some narrative statements and supplements that were not turned over apparently to criminal defense counsel at the 2000 trial. So that was following a complete hearing on what was and wasn't provided at the trial level. That was the decision that Judge Behrens rendered in ordering a new trial. It wasn't the ID of the pictures? No, it wasn't any sort of determination or order that the ID was insufficient or improperly administered. Correct. So we have a Brady issue here. We made an argument, and the court understandably said that we're acknowledged that there was a Brady violation that was determined by the trial court. So we're not even really here to argue that. We're here to argue that immunity applies to even S.H.I.E.L.D., that Brady violation should it have occurred. And with respect to Fairfield County as well, Fairfield County actually, albeit a little bit rare, they were ordered to stay in the case following the motion to dismiss stage. So we underwent complete discovery over two years, had multiple depositions, and there was no facts borne out in the record to connect any sort of liability to the county. Nothing under any of those four theories of Monell, ratification, customer tolerance, a failure to train, or a policy connected any sort of wrongdoing to Fairfield County alleging a failure to faultily train prosecutors on Brady or to faultily administer trial court proceedings and prosecutions. Nothing of the nature came out in the record, and that still holds true. Nothing in Appellant's arguments today can overcome the lack of anything connecting this to a Monell liability case for Fairfield County. So those are our two overarching concerns here on behalf of my appellees, Your Honors. I'm happy to take any further questions, though I have about a minute and a half left, but otherwise I thank you for your time. Thank you very much. You may proceed with your rebuttal, Mr. Yaklovich. Thank you, Your Honor. Real quick with regard to something that the county and Marks' counsel just mentioned. I think that's erroneous. Jackson v. City of Cleveland is a case that I've cited a couple of times in the briefs, and I think in Jackson this court was trying to clarify what's investigative conduct by a prosecutor versus what's prosecutorial conduct because investigative conduct isn't fielded by absolute immunity. What this court said in that case of Jackson is that anything the prosecutor does prior to the indictment is either investigative activity or at least non-prosecutorial activity. And kind of to finish on an earlier point that I'd made, if we look at this March 6th, March 7th meeting, Marks and Silvernail go to the actual home of the Stephanisis' and they meet with them. And what we know is really Stephanisis had sworn, well, told the detective, I did not identify Ralph Smith during the photo array. Well, that statement by Stephanisis continued until that meeting at the Stephanisis' house. And then the day after that, Ralph Blaine Smith gets charged criminally. It's kind of inescapable that whatever happened at that meeting, because nothing again was recorded, whatever was said or done, Rudy Stephanisis, having denied he'd identified Ralph Blaine Smith during the array, suddenly reversed his position again and implicated Ralph Blaine Smith as one of the robbers. Did the trial jury know about this? No. The defense counsel didn't know that because defense counsel never got any of the documents. That's the Brady violation that we're all referring to. All of that was withheld, Your Honor. So I know I only have a moment left, and I'll wrap this up. Look, I'm an old man. And my experience has been that some of the absolutely sharpest people I've known have made mistakes. And in this case, mistakes were made. I know that two of you have sat probably at this same bench with Judge Marbley, who's been assigned to sit on appellate cases. He's a sharp guy. He just got it wrong this time. He got a couple of things wrong. The first was the main part of my argument. But he also got wrong this, you know, was this investigative activity, because it happened long before criminal charges even got filed, or was it prosecutorial activity? Mistakes were made, and I got a client who spent 21 years in prison for a crime he, I think, rather plainly did not commit, and he got convicted on the basis of essentially no evidence. I probably have been looking at a red light, used up all of my time. I thank you for your attention. Thank you very much. I'd like to thank both sides for their arguments, and the case will be submitted.